**JUDGE LYNCH**

## UNITED STATES DISTRICT COURT

SOUTHERN   District of   NEW YORK

Christine Roussel,

        Plaintiff(s),

- against -

Willkie Farr & Gallagher Long Term Disability
Income Plan and CIGNA Life Insurance Company
of New York f/k/a INA Life Insurance Company
of New York,

        Defendant(s).

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**'08 CIV 3690**

TO: (name and address of defendants)
Willkie Farr & Gallagher Long Term Disability Income Plan
787 Seventh Avenue
New York, New York 10019

CIGNA Life Insurance Company of New York
f/k/a INA Life Insurance Company of New York
Two Liberty Place, TL 18A
Philadelphia, Pennsylvania 19192-2362

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY, (name and address)

**DeHAAN BUSSE LLP
300 Rabro Drive
Suite 101
Hauppauge, New York 11788**

an answer to the complaint which is herewith served upon you, within __20__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

APR 1 7 2008

J. MICHAEL McMAHON

CLERK _(signature)_

DATE

(BY) DEPUTY CLERK

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------X
CHRISTINE ROUSSEL,

          Plaintiff,

– against –

WILLKIE FARR & GALLAGHER LONG TERM
DISABILITY INCOME PLAN and CIGNA LIFE
INSURANCE COMPANY OF NEW YORK F/K/A INA
LIFE INSURANCE COMPANY OF NEW YORK,

          Defendants.
---------------------------------------X

Civil Action No.:

**COMPLAINT**

Plaintiff, Christine Roussel, by her attorneys, DEHAAN BUSSE LLP, for her Complaint against the Defendants, Willkie Farr & Gallagher Long Term Disability Income Plan (the "LTD Plan") and CIGNA Life Insurance Company of New York f/k/a INA Life Insurance Company of New York ("CIGNA"), hereby alleges as follows:

### JURISDICTION AND VENUE

1. Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2. Under the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001, et seq.) ("ERISA"), the long-term disability plan at issue in this litigation must contain provisions for administrative or internal appeal of denial of benefits. Plaintiff has exhausted all administrative avenues of appeal and has received a final denial. Therefore, this matter is properly before this court for *de novo* judicial review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

3. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place or where a defendant resides or may be found.

4. Willkie Farr & Gallagher is the named Plan Administrator, with a home office located at 787 Seventh Avenue, New York, New York 10019. Therefore, venue is proper in the Southern District of New York because that is where the LTD Plan is administered.

### NATURE OF ACTION

5. This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee benefit welfare plan.

6. The LTD Plan provides long term disability benefits to employees of Willkie Farr & Gallagher ("Willkie"). As such, the LTD Plan is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, and ERISA applies to this action. Said benefits were effective at all times relevant hereto.

7. Claims for benefits are administered and paid through a Long Term Disability Policy issued by Defendant, CIGNA. CIGNA Group Insurance has made all of the claims decisions in this matter.

### STANDARD OF REVIEW

8. The LTD Plan in force at the time Plaintiff became disabled does not contain a grant of discretion to CIGNA or the Plan Administrator.

9. As such, this Court must conduct a *de novo* review of the denial of Plaintiff's claim under Firestone Tire & Rubber Co. v. Bruch.

## THE PARTIES

10. Plaintiff was born in January 1945, is presently 63 years old, and is a resident of Jackson Heights, New York.

11. Defendant, the LTD Plan, is an employee benefit welfare plan, as defined by ERISA. Willkie is the named Plan Administrator and the agent for service of legal process, with a home office located at 787 Seventh Avenue, New York, New York 10019.

12. Defendant, CIGNA, is an incorporated insurance company licensed to conduct the business of insurance in New York. Upon information and belief, CIGNA is the named Claims Administrator. CIGNA's address is Two Liberty Place, TL 18A, 1601 Chestnut Street, Philadelphia, Pennsylvania 19192 - 2362.

## STATEMENT OF FACTS

Plaintiff's Occupation:

13. Plaintiff became an employee of Willkie in February 1984. Plaintiff continued working for Willkie through November 18, 2001, on which date she became disabled. As such, she was a covered participant in the LTD Plan.

14. Prior to and including November 18, 2001, Plaintiff was employed by Willkie as a Senior Legal Assistant. In this capacity, Plaintiff was responsible for filing documents; organizing and indexing documents for records; coordinating distributions; attending and assisting at meetings and drafting sessions; assisting with data rooms; preparing office records; assisting with closings; notarizing signatures on legal documents; delivering documents and packages by hand to clients and attorneys working out of the office; proofreading and editing documents; obtaining client and matter numbers for service company invoices sent to former lawyers and legal assistants; obtaining correct service of process addresses for business entities; notifying service companies of same; and translating documents from French to English.

15. Plaintiff's pre-disability income was about $55,000.00 per year.

Page 3 of 14

16. For the period beginning prior to November 18, 2001, and at all relevant times hereto, Plaintiff, together with other regular employees of Willkie, was covered as a participant under the LTD Plan.

The Terms of the LTD Plan:

17. The LTD Plan provides benefits to its participants through a Group Disability Policy (the "Group Policy") issued and administered by CIGNA.

18. CIGNA, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers. In this position, CIGNA could significantly reduce its operating expenses, and increase its profits, simply by denying claims. This would have a direct dollar-for-dollar effect. As such, CIGNA is operating under a significant conflict of interest which had a material effect on its decision on this claim.

19. The Group Policy provides for payment of monthly benefits to eligible employees, and is designed to protect employees against a loss of earned income during periods of extended disability. Immediately prior to the onset of her disability, Plaintiff was an active employee working a minimum of 30 hours per week, and as such, was covered under the Group Policy.

20. As a Senior Legal Assistant, Ms. Roussel is a member of Class 2 of the LTD Plan.

21. Plaintiff's benefit equals 60% of her Basic Monthly Earnings reduced by "Other Benefits," which includes benefits received pursuant to the Social Security Act.

22. In Plaintiff's case, the Group Policy provides for a benefit of approximately $2,750.00 per month, less the amount of "Other Benefits," as defined by the Group Policy.

23. Long Term Disability benefits are to commence after a "Benefit Waiting Period" of 180 days.

24. In the instant matter, Plaintiff's Long Term Disability benefits commenced on May 26, 2002, the expiration of the Benefit Waiting Period, and were terminated by CIGNA on May 25, 2004.

25. The maximum benefit period under the LTD Plan extends to the claimant's 70th birthday, provided the period of total disability begins prior to age 70, which is the case herein.

26. The LTD Plan defines "Disability" as follows:

*An Employee will be considered Disabled if because of Injury or Sickness,*
*1. he is unable to perform all the material duties of his regular occupation; and after Monthly Benefits have been payable for 24 months, he is unable to perform all the material duties of any gainful occupation for which he is reasonably qualified based on his education, training or experience, as well as prior earnings.*

27. The LTD Plan also requires a claimant to provide proof of Disability and that she is under the regular attendance of a physician.

28. The LTD Plan gives CIGNA the right to examine Plaintiff. The LTD Plan states:

**Physical Examination**
*The Insurance Company, at its own expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require.*

29. The LTD Plan requires Plaintiff to apply for "Other Benefits," which includes benefits received pursuant to the Social Security Act.

30. Moreover, if Plaintiff does not apply for any "Other Benefit" (*e.g.* Social Security Disability benefits), CIGNA can penalize Plaintiff by assuming the receipt of the Other Benefit and estimating the amount of the "Other Benefit." The LTD Plan states:

**Assumed Receipt of Benefits**

*If an Employee is covered under the Federal Social Security Act, for any disability or Old Age benefit, Statutory Disability (if applicable), Worker's Compensation, or similar laws, he will be assumed to be receiving such benefits for himself (and for his dependents, if applicable). These assumed benefits will be the amount the Insurance Company estimates he (and his dependents, if applicable) is eligible to receive. This assumption will not be made if the Employee gives the Insurance Company proof that:*

(1) *he has applied for these benefits; and*

(2) *payments were denied.*


**Plaintiff's Disability:**

31. Plaintiff was forced to stop working on November 18, 2001, due to Cervical Osteoarthritis, Cervical Derangement and Radiculopathy, Lumbar Osteoarthritis, Rheumatoid Arthritis, Status Post Arthroscopic Surgery of the Left Knee, Bilateral Knee Arthritis, Arteriosclerotic Heart Disease, Hypertension, Thyroid Disease, Obesity and Depression.

32. Plaintiff was diagnosed with the above medical conditions by her various treating physicians.

33. In a report dated November 25, 2001, Plaintiff's treating Orthopedist noted the following findings upon examination: decreased and painful extension of the cervical spine; restricted right rotation of the cervical spine to 35-40 degrees with pain; trigger point spasm of the right trapezius with pain radiating across the back of the right shoulder; restricted left rotation of the cervical spine to 40 degrees with trigger point spasm and pain radiating along the vertebral border of the left scapula; decreased grip strength on the right; restricted interspinous motion of the trunk to 60 degrees with pain; extension of the lumbar spine was painful and restricted with spasm, as was right and left lateral bending; straight leg raising was painful bilaterally; left patella pain; medial joint line, medial condyle and medial patella pain of the right knee; pain on patella compression and crepitus on motion of the right knee; and pain upon range of motion of the right knee.

34. The treating orthopedist concluded his November 25, 2001, report by stating:

*As a result of cervical spine, lumbar spine and bilateral knee impairments, she is not able to work in any capacity that would require her to sit for more than 20-25 minutes or walk more than 1-2 blocks and kneeling, squatting, bending, using stairs, running, jumping, carrying, climbing, twisting, postural changes and barometric changes result in increased severe and incapacitating pain. As a result, she is not able to work in any employment, including a paralegal, which requires her to sit for prolonged periods of time, use her hands, bend over, and sit in a forward position necessary to record the intricacies of the legal profession. Further complicating her orthopedic and rheumatologic problems is a history of high blood pressure, arterial sclerotic heart disease, hypertension, thyroid disease, and depression. All these medical problems require additional medication along with their associated side-effects and complications which compromise her ability to use cognitive reasoning, normal memory, reflex deficits, and cause fatigue further complicated by a psychological disorder resulting in depression.*

*In my opinion, the patient should continue to receive long-term disability. Her condition is permanent and chronic and she is not able to work.*

35. In a subsequent report dated March 13, 2002, the treating Orthopedist made similar findings – noting that Ms. Roussel has evidence of orthopedic disability of the cervical spine demonstrated by painful functional restriction of motion by more than 40% accompanied by spasm, guarding and radiation; she has evidence of permanent orthopedic disability of the lumbar spine demonstrated by a painful functional restriction of motion by more than 20%

accompanied by spasm and guarding; she has evidence of a permanent orthopedic disability of both knees demonstrated by a painful functional restriction of motion with evidence of arthritic changes and persistent pain.

36. In his March 13, 2002, report, the treating Orthopedist again stated: "In my opinion, she is permanently disabled from any type of employment and should receive Long-Term Disability. Her condition is permanent, chronic and will not improve."

37. In the Physical Abilities Assessment Forms filled out for CIGNA, the treating Orthopedist consistently noted that Ms. Roussel was incapable of any work as she could sit, stand and walk for less than 2.5 hours each in an eight hour workday.

38. In a third report dated December 3, 2004, the treating Orthopedist documented a worsening of Plaintiff's medical conditions. The treating orthopedist also described the results of numerous diagnostic tests. In particular:

> *Cervical MRI dated 9-20-04 Advanced degenerative changes with stenosis is evident. A herniated disc is present at C6-7. Straightening of the cervical lordotic curve. This accounts for restriction on rotation extension and keeping her head in a static position as when bent down for editing and also accounts for the decreased sensation causing paresthesias in her hands.*
>
> *MRI Left Knee 9-08-04 demonstrates S/P surgery. Synovitis and Chondromalacia on articular surface of the patella and patella facets. Lateral patella subluxation is evident. Prepatella bursitis is also evident. These findings would account for pain kneeling, squatting, bending, stairs, running, jumping, crawling and sitting for more than 20 minutes.*
>
> *MRI of the Lumbar Spine dated 8-16-04, Bulging disc L4-5. Decrease of lumbar lordotic curve. Degenerative arthritis of the lumbar spine. Her size and weight aggravate the underlying DJD [of] the spinal spasm and reduce the normal lumbar curve. Consequently she can't sit, twist, turn, change posture without pain and restricted motion.*
>
> *Hand Xrays show DIP joints narrow and irregular – DJD dated 9-7-04 (L) knee x-rays show patella spurring and Medial compartment is decreased DJD Cervical and lumbar x-rays reveal JD and cervical stenosis. Loss of lordotic curve in both areas.*

39. In a Rheumatoid Arthritis Impairment Questionnaire dated December 18, 2004, Plaintiff's treating Board Certified Rheumatologist diagnosed Ms. Roussel with degenerative arthritis in her cervical and lumbar spines and degenerative arthritis of the left knee. The treating Rheumatologist stated that Plaintiff suffers from pain, inflammation and limited range of motion of the neck, lower back and both knees, with joint deformity at those sites, and crepitus in her knees.

40. As a result of these impairments, the treating Rheumatologist stated that Ms. Roussel is limited to no more than one (1) hour of sitting and less than one (1) hour of standing/walking in an eight hour workday, and she can lift/carry no more than five (5) pounds on an occasional basis. The treating Rheumatologist also stated that Plaintiff's pain is severe enough to constantly interfere with attention and concentration, and she must avoid wetness, fumes, gases, temperature extremes, heights, pushing, pulling, kneeling, bending and stooping.

41. Ms. Roussel was hospitalized in January 2005, as a result of numbness of the left leg and difficulty walking.

42. Additionally, aside from the medications for Ms. Roussel's blood pressure, cardiac and thyroid problems, Ms. Roussel has been prescribed some heavy duty pain medication, including Darvocet, Vicodin and Oxycontin. Oxycontin is a controlled narcotic for the treatment of moderate to moderately severe pain, which causes severe side effects including memory problems and the inability to function and concentrate on a sustained basis.

43. Ms. Roussel was hospitalized in August 2006, for a bleeding ulcer, which required two (2) blood transfusions.

44. The residual functional capacity assessments completed by Plaintiff's treating physicians indicate physical limitations which preclude even sedentary work.

45. Plaintiff has received, and continues to receive, appropriate medical treatment for her various medical conditions from her treating physicians.

## PLAINTIFF'S FIRST CAUSE OF ACTION FOR LONG-TERM DISABILITY BENEFITS

46. With regard to Plaintiff's claims for benefits under the LTD Plan, she continued to work through November 18, 2001.

47. On November 18, 2001, Plaintiff was forced to stop working due to Cervical Osteoarthritis, Cervical Derangement and Radiculopathy, Lumbar Osteoarthritis, Rheumatoid

Arthritis, Status Post Arthroscopic Surgery of the Left Knee, Bilateral Knee Arthritis, Arteriosclerotic Heart Disease, Hypertension, Thyroid Disease, Obesity and Depression.

48. In compliance with the terms and conditions of the LTD Plan, Plaintiff timely applied for long-term disability insurance benefits.

49. By letter dated May 6, 2002, CIGNA notified Plaintiff that it was approving her claim for LTD benefits with benefits beginning on May 26, 2002 - following the 180-day Elimination Period.

50. Plaintiff received LTD benefits from May 26, 2002, through May 25, 2004.

51. By letter dated June 7, 2004, CIGNA notified Plaintiff that it was terminating her claim for LTD benefits effective May 25, 2004, following the shift in the definition of disability from own occupation to any occupation. CIGNA erroneously concluded that Plaintiff was capable of performing her own or any occupation on a full time basis.

52. Although the Group Policy explicitly gives CIGNA the right to have Plaintiff examined by a physician of its choice, the carrier chose not to exercise this right.

53. This adverse determination was based on the opinion of CIGNA's own in-house Associate Medical Director that Ms. Roussel's functionality as reported by her treating physicians is not supported by the medical documentation in her file.

54. As a file-review physician, CIGNA's Associate Medical Director never examined Plaintiff and as such, his report is medically inferior and scientifically unreliable as compared to the opinions of the claimant's treating doctors. Moreover, the Associate Medical Director has a pecuniary interest in finding Plaintiff not disabled.

55. In its review of her claim, CIGNA mischaracterized Ms. Roussel's own occupation. CIGNA erroneously labeled Ms. Roussel's own occupation as that of a paralegal, which is considered light work. In reality, Ms. Roussel was employed by Willkie as a Legal Assistant, a sedentary occupation.

56. Via letter dated November 22, 2004, Plaintiff's counsel requested a copy of Ms. Roussel's entire claim file (including CIGNA's internal claim manuals or guidelines); advised the carrier that Plaintiff would be submitting additional medical documentation; and requested that CIGNA leave Ms. Roussel's claim open pending receipt of the additional documentation.

57. By letter dated November 4, 2005, Plaintiff, through counsel, formally appealed CIGNA's June 7, 2004, termination of Plaintiff's LTD benefits by submitting comments and additional medical documentation in support of Plaintiff's claim.

58. By letters dated December 7, 2005, January 5, 2006, and March 3, 2006, CIGNA notified Plaintiff that it was in the process of obtaining a peer review of Ms. Roussel's claim.

59. By letter dated March 17, 2006, CIGNA upheld its decision to terminate Plaintiff's LTD benefits as of May 25, 2004.

60. This adverse determination was based on the opinion of peer review physician Gwen Brachman, M.D., who concluded that Ms. Roussel was capable of performing sedentary jobs with the following restrictions: no lifting greater than 10 pounds; no standing/walking greater than 5 minutes; no bending, squatting, kneeling, crouching, stooping, crawling or climbing, working around machinery or in safety sensitive positions; the building must contain handicap facilities, including elevators and ramps; Ms. Roussel must be near bathroom facilities and have access to a cafeteria; and she should be able to change positions and to stretch at will to maximize her comfort.

61. As part of her file review, Dr. Brachman contacted Plaintiff's treating Orthopedist. CIGNA, in its March 17, 2006, denial letter, mischaracterized Dr. Goldman's statements in a blatant attempt to find a reason to deny Ms. Roussel's claim.

62. According to CIGNA's denial letter, "Dr. Goldman agreed that the severity of Ms. Roussel's osteoarthritis in the neck and hands did not preclude her from performing the essential functions of most sedentary jobs, and that reasonable accommodations would include no lifting greater than 20 pounds, the ability to frequently change position and stretch her fingers and neck, no prolonged repetitive motion tasks, and an ergonomic work station."

63. However, according to Dr. Brachman's report, while Dr. Goldman allegedly stated that the severity of Plaintiff's radiculopathy would not preclude her from performing the essential functions of many sedentary jobs, contrary to CIGNA's contention, he also stated Ms. Roussel was unable to climb stairs, squat, kneel, stand or walk for more than a few minutes; due to the combination of her pain symptoms from lumbar and knee osteoarthritis and her obesity, Ms. Roussel was unable to sit for more than 20-25 minutes at a time; and that even with the ability to change position at will, Plaintiff would not be able to sustain an 8 hour workday.

64. It is evident from the treating Orthopedist's various reports and from Dr. Brachman's summary of their conversation that the treating Orthopedist clearly believes that Ms. Roussel is totally and permanently disabled.

65. CIGNA's attempt to put words into the treating Orthopedist's mouth is a blatant example of CIGNA's sloppy claims handling and bias toward Ms. Roussel.

66. Further, as a file review consultant, Dr. Brachman never examined Plaintiff and as such, her report is medically inferior and scientifically unreliable as compared to the opinions of the claimant's treating doctors. Moreover, Dr. Brachman had a pecuniary interest in finding Plaintiff not disabled.

67. For a second time, CIGNA chose to forego its right to have Plaintiff examined. As a result, the only scientifically and medically acceptable evidence has been provided by Ms. Roussel's treating doctors, all of whom found her to be totally disabled.

68. Plaintiff applied for and was awarded Social Security Disability Benefits by the Social Security Administration ("SSA") without the need for a hearing. Plaintiff's Notice of Award from the SSA is dated November 17, 2002. Plaintiff was found to be disabled under the Social Security Act with an onset date of November 26, 2001.

69. The definition of disability under the Social Security Act is more restrictive than the definition of disability found in the LTD Plan.

70. CIGNA failed to reconcile the conclusion of the SSA, that Ms. Roussel was totally disabled, with its conclusion that she was not totally disabled under a far less stringent definition of disability.

71. In addition, CIGNA receives a financial benefit from the Social Security Disability award as a result of the policy offset provisions.

72. By letter dated March 28, 2006, Plaintiff, through counsel, requested a copy of Plaintiff's entire claim file, including among other things, any documents from the focus review held on Ms. Roussel's claim; copies of CIGNA's claim manuals; and the organizational structure of CIGNA's claims department.

73. By letter dated July 6, 2006, CIGNA provided a copy of Ms. Roussel's file, however the carrier refused to provide any information on the focus review, the claim manuals, and the organizational charts.

74. By letter dated October 30, 2006, Plaintiff, through counsel, formally appealed CIGNA's March 17, 2006, termination of Plaintiff's LTD benefits by submitting comments and additional medical documentation in support of Plaintiff's claim.

75. By letter dated November 28, 2006, CIGNA advised that it requested an "independent" peer review of Ms. Roussel's file

76. By letters dated December 13, 2006 and December 27, 2006, CIGNA notified Plaintiff that it was waiting for the results of the review by the "Independent Peer Review" physician and that it needed extensions of time in order to render a decision on her claim.

77. Finally, CIGNA, by letter dated January 25, 2007, issued a final denial of Plaintiff's claim for continued LTD benefits.

78. In this final denial, CIGNA concluded, contrary to the medical evidence on file, that there were "no clinical findings to support a severity of ongoing physical impairments or loss of function to preclude Ms. Roussel from performing any gainful occupation beyond May 25, 2004." This decision was based on the findings of the peer review physician, Dan Gerstenblitt, M.D.

79. Contrary to the medical records, Dr. Gerstenblitt shockingly stated that "this reviewer cannot ascertain why the claimant went out of work in 2001. The review is being driven strictly by the self reports and self-imposed limitations of the claimant."

80. Given all of the findings upon the treating Orthopedist's examination, it is obvious that Dr. Gerstenblitt did not adequately review Ms. Roussel's file or was influenced by his own bias against Plaintiff.

81. As a file review doctor, Dr. Gerstenblitt never examined Plaintiff and as such, his report is medically inferior and scientifically unreliable as compared to the opinions of the claimant's treating doctors. Moreover, Dr. Gerstenblitt had a pecuniary interest in finding Plaintiff not disabled.

82. For a third time, CIGNA chose to forego its right to have Plaintiff examined. As a result, the only scientifically and medically acceptable evidence has been provided by Ms. Roussel's treating doctors, all of whom found her to be totally disabled.

83. In seeking to further its own pecuniary interest, CIGNA has denied Plaintiff of her right to a full and fair review of the denial of her claim, as required by ERISA.

84. CIGNA, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers. As such, CIGNA is operating under a significant conflict of interest which had a material effect on its decision-making on this claim.

85. CIGNA, as the claims administrator for the LTD Plan, is a fiduciary, as defined by ERISA, and owes a fiduciary duty to Plan participants such as Ms. Roussel.

86. Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of Plan participants and beneficiaries, and strictly in conformance with the provisions of the Plan.

87. The adverse claim decisions rendered in the instant action have been made by CIGNA, which has a pecuniary interest in denying claims. This pecuniary interest created a conflict of interest, which had a direct and important effect on CIGNA's decision making on Ms. Roussel's LTD claim.

88. Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the Plan and thereby make decisions in accordance with plan language.

89. CIGNA's decisions were not supported by the medical evidence and were not supported by the applicable plan language.

Page 13 of 14

90. CIGNA's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

91. Plaintiff was and remains disabled within the terms and conditions of the LTD Plan. Plaintiff is, therefore, entitled to the continued receipt of Long-Term Disability benefits retroactive to May 26, 2004, and continuing to the present under the LTD Plan.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. That the Court declare and then determine that, under the terms of the LTD Plan, Plaintiff's disability began on November 18, 2001, and that she continues, without interruptions, to be disabled within the terms of the LTD Plan;

b. That, after making such a determination, the Court grant Plaintiff appropriate legal relief and order Defendants, the LTD Plan and CIGNA, to compensate Plaintiff for her disability in accordance with the terms of the LTD Plan, retroactive to May 26, 2004;

c. That the Court award Plaintiff her attorney's fees pursuant to ERISA, 29 U.S.C. §1132(g); and

d. That Plaintiff receive such other necessary, proper and equitable relief, including interest, costs and disbursements, as to which she may be entitled.

Dated: April 3, 2008
Hauppauge, New York

DEHAAN BUSSE LLP

By: _____
John W. DeHaan (JWD 8863)
300 Rabro Drive
Suite 101
Hauppauge, New York 11788
Telephone:  (631) 582-1200
Facsimile:  (631) 582-1228